O

# United States District Court
# Central District of California

LEONIDES ENRIQUEZ,

    Plaintiff,

    v.

CITY OF LONG BEACH et al.,

    Defendants.

Case № 2:23-cv-06464-ODW (AJRx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [62]**

## I.    INTRODUCTION

Plaintiff Leonides Enriquez brings this action for alleged civil rights violations against Defendants City of Long Beach (the "City"), Officer Hector Lizardo, Officer Leighton Mays[1], Officer Trevor Costin, and Officer Frank Nogales. (SAC.) Defendants move for summary judgment on all causes of action. (Mot.) The Motion is fully briefed. (*See* Opp'n, ECF No. 67; Reply, ECF No. 72.) For the reasons below, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion.[2]

---

[1] Enriquez does not allege Lizardo's or Mays's first name. (Second Am. Compl. ("SAC"), ECF No. 47.) The Court derives Lizardo's and May's first name from Defendants' Motion for Summary Judgment. (Mot. Summ. J. ("Motion" or "Mot.") 1, ECF No. 62.)

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[3]

On August 8, 2021, at around 10:50 p.m., Officers Lizardo, Mays, Costin, and Nogales (collectively, the "Officers") learned through Long Beach Police Department ("LBPD") dispatch that an armed robbery had occurred at a Food 4 Less store. (SUF 7, ECF No. 64.) The suspect, later identified as Enriquez, was reported to be a Hispanic male wearing a black hoodie and white shoes, carrying a Glock-style handgun, and driving a silver or gray Honda Accord. (*Id.* at 8–10; Decl. Matthew M. Peters ISO Mot. ("Peters Decl.") Ex. 1 ("Mays Dep. Tr.") 33:3–13, ECF No. 63.) Signal Hill Police Department ("SHPD") subsequently engaged in a pursuit of the suspect vehicle. (SUF 11.) The Officers then learned through LBPD dispatch that the suspect vehicle was involved in a traffic collision at the intersection of Pacific Coast Highway ("PCH") and Harbor Avenue and that the suspect fled southbound from the scene of the collision on foot. (*Id.* at 12–13.)

Officers Mays and Nogales arrived at the intersection of PCH and Harbor Avenue, where they observed the scene of the collision and an abandoned silver Honda Accord. (*Id.* at 14.) As Officers Mays and Nogales drove southbound on Harbor Avenue, witnesses informed Officers Mays and Nogales that a Hispanic male wearing a dark-colored sweatshirt, who could be armed, had run southbound from the scene of the collision, and was standing by a white truck parked next to a taco stand on Harbor Avenue. (*Id.* at 15–17.) Officers Mays and Nogales then observed Enriquez, wearing a dark gray sweatshirt and white shoes, leaning against a white truck parked on Harbor Avenue, just south of a taco stand. (*Id.* at 18–19.)

Having parked approximately twenty feet north of Enriquez, Officers Mays and Nogales exited their vehicles with their firearms pointed towards Enriquez. (*Id.* at 20, 22.) Officer Mays, standing at the driver side door, instructed Enriquez to approach

---

[3] The Court derives the factual background, some of which is disputed, from the parties' Separate Statement of Uncontroverted Facts ("SUF"), Statements of Genuine Disputes ("SGD"), Additional Statements of Material Facts ("AMF"), and responses thereto, in addition to the parties' clearly and specifically cited evidence. *See* C.D. Cal. L.R. 56-1 to 56-4.

the police vehicle. (*Id.* at 23; Peters Decl. Ex. 3 ("Mays Bodycam") 5:56:36–40, ECF Nos. 63, 66.) As Enriquez began walking towards the police vehicle, Officer Nogales commanded Enriquez to "get your hands up" three times, and both Officers Mays and Nogales instructed Enriquez to "keep your hands out of your pocket." (SUF 26; Peters Decl. Ex. 6 ("Nogales Bodycam") 5:56:33–42, ECF Nos. 63, 66; Mays Bodycam 5:56:40.) Enriquez then walked towards the police vehicle while appearing to use both of his hands to pull up his pants. (Mays Bodycam 5:56:40–41; SGD 25, ECF No. 68; *see also* SUF 25 (stating that Enriquez was "grabbing his waistband area").) Officer Mays then commanded Enriquez to "put your hands on the hood," and Enriquez, after adjusting his sweatshirt by pulling it down to cover his waist, put both his hands on the hood of the police vehicle. (Mays Bodycam 5:56:44–49; SUF 27–28; SGD 27–28.)

As Enriquez stood at the police vehicle with his hands on the hood, Officer Mays instructed Enriquez to "keep your hands up." (Mays Bodycam 5:56:49.) Enriquez then raised his right arm off the police vehicle to point towards the taco stand while attempting to speak to Officer Mays. (*Id.* at 5:56:52.) After Officer Mays ordered him to "keep your hands on the hood, I'm not going to tell you again," Enriquez put his right hand back on the hood. (SUF 30–31; Mays Bodycam 15:56:53–55.) Officer Mays then announced, "417 left pocket[4]," referring to possession of a firearm. (SUF 33–34; Mays Bodycam 5:56:58–59; Mays Dep. Tr. 46:7–10.) Officer Mays ordered Enriquez to "separate your feet," and Enriquez stepped away from the vehicle in a wider stance and removed his hands from the hood with both his hands moving down towards his waistline. (SUF 36–37; Mays Bodycam 5:57:03–05.) As Enriquez stepped away from the police vehicle, Officer Nogales yelled, "Do not reach for it! Stop! Get your hands up!" (Nogales Bodycam 5:57:03–05.) At the same time, Officer Mays ordered Enriquez to "keep

---

[4] It is undisputed that the firearm was in Enriquez's right pocket. (SUF 35.) Officer Mays's observation of "left pocket" was based on the location of the pocket from his point of view. (*Id.*)

your hands in your pocket," and Enriquez responded by spreading his arms away from his waistline. (Mays Bodycam 5:27:06–07.) Officer Mays then commanded Enriquez to "put them on the hood, I'm not going to tell you again." (*Id.* at 5:57:07–09; SUF 39.) Enriquez stepped towards the police vehicle and put his hands back on the hood. (Mays Bodycam 5:57:09; SUF 38.)

Once more, Enriquez raised his right hand off the police vehicle and gestured while speaking to Officer Mays. (SUF 40; Mays Bodycam 5:57:13.) Around this time, Officers Lizardo and Costin arrived at the scene. (SUF 45.) Officer Lizardo stood slightly behind Officer Mays's left shoulder while Officer Costin stood to the right of Officer Nogales. (*Id.* at 46.) Officer Nogales informed Officer Costin that Enriquez "has a 417 in his pocket." (*Id.* at 47; Nogales Bodycam 5:57:11.) Meanwhile, Officer Mays ordered Enriquez to "keep your hands on the hood" while pointing at the hood. (SUF 41; Mays Bodycam 5:57:15.) Instead of complying, Enriquez removed his left hand off the hood and gestured with both hands while speaking to Officer Mays. (SUF 42; Mays Bodycam 5:57:16.) Officer Mays ordered Enriquez to keep his hands on the hood two more times. (SUF 43; Mays Bodycam 5:57:17–21 (yelling, "Put your hands on the hood! I'm not going to tell you again!" and "Keep your hands on the hood!").) In response, Enriquez placed both hands back on the hood. (SUF 44; Mays Bodycam 5:57:24.)

As Enriquez stood with both hands on the hood, Officer Costin yelled to Enriquez, "We know you got a gun. Don't reach for it. You're going to get shot, okay? Get down on your knees." (SUF 49–50; Nogales Bodycam 5:57:22–28.) Enriquez removed his hands from the hood and stepped backwards, lowering both of his hands first towards his waistline then slightly outward away from his waist. (SUF 51; SGD 51; Mays Bodycam 5:57:30–31.) Officers Mays and Lizardo then each fired two rounds at Enriquez. (SUF 52.) As he laid on the ground, Enriquez exclaimed, "Why? Why? Why? Why? I was just trying to get on my knees." (*Id.* at 54; Mays Bodycam 5:57:36–43.)

Based on the above allegations, on August 8, 2023, Enriquez filed the instant civil rights action against Defendants. (Compl., ECF No. 1.) On March 4, 2024, Enriquez filed the operative Second Amended Complaint, alleging the following causes of action under the Fourth Amendment and 42 U.S.C. § 1983 against the Officers: (1) unlawful detention and arrest; (2) excessive force; and (3) delay of medical care. (SAC ¶¶ 41–64.) Enriquez also asserts the following municipal liability claims against the City: (4) ratification; (5) failure to train; and (6) unconstitutional custom or policy. (*Id.* ¶¶ 65–92.)

On February 3, 2025, Defendants moved for summary judgment on all causes of action. (Mot.) Enriquez does not oppose summary judgment on the first, third, and fourth causes of action. (*See generally* Opp'n.) Additionally, pursuant to the Pretrial Conference Order ("PTCO"), signed by the Court and all parties, Enriquez abandoned his first, third, and fourth causes of action. (PTCO 2, ECF No. 105.) Accordingly, the only causes of action that remain are Enriquez's claims for excessive force under the Fourth Amendment and 42 U.S.C. § 1983 against the Officers and for municipal liability based on failure to train against the City. (*Id.*)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus.*

*Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 324. The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 250). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes and (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced . . . ." *Id.*

## IV. PRELIMINARY MATTERS

The Court first addresses the parties' request for judicial notice and evidentiary objections.

### A. Request for Judicial Notice

Defendants request that the Court judicially notice Los Angeles Superior Court minute orders and transcripts from *People v. Leonides Enriquez*, Case No. NA117793. (Req. Judicial Notice, ECF No. 65.) The request is unopposed. As the Court "may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases," the request is **GRANTED**. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see also* Fed. R. Evid. 201.

### B. Evidentiary Objections

The parties also raise a host of evidentiary objections. (*See* SGD; Defs.' Resp. SGD & AMF, ECF No. 73; Defs.' Objs. AMF, ECF No. 74.)

First, any evidentiary objections not set forth in a "separate memorandum" that "identif[ies] the specific item of evidence to which objection is made, the ground for the objection, and a very brief argument with citation to authority as to why the objection is well taken" violate the Court's Scheduling and Case Management Order ("Scheduling Order") and the Court therefore disregards them. (Scheduling Order 8, ECF No. 30.)

Next, the Court **OVERRULES** all boilerplate objections based on relevance, lack of foundation, unfair prejudice, hearsay, and improper legal argument. Relevance- and foundation-based objections are duplicative of the summary judgment context. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Objections under Federal Rule of Evidence 403 are also "unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues." *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 808 (C.D. Cal. 2022), *aff'd*, No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024). As for hearsay, a court may not *grant* a summary judgment motion on the basis of hearsay evidence, but it may *deny* a summary judgment motion on the basis of hearsay evidence as long as it finds that the hearsay evidence *would be admissible* at trial. Fed. R. Civ. P. 56(e); *Fraser v Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).

The Court also disregards all improper arguments and statements of law. (*See* Scheduling Order 7–9.)

Further, much of the material to which the parties object is unnecessary to the resolution of the Motion and the Court need not resolve those objections. To the extent the Court relies on objected-to evidence in this order without further discussion, those objections have been thoroughly considered and are **OVERRULED**. *See Burch*, 433 F. Supp. 2d at 1122 (proceeding with only necessary evidentiary rulings).

## V.     DISCUSSION

Defendants move for summary judgment on all six causes of action. (*See* Mot.) Pursuant to the PTCO, the only remaining causes of action are Enriquez's claims for excessive force against the Officers and for municipal liability based on failure to train against the City.[5] (PTCO 2.)

**C.     Second Cause of Action—Excessive Force**

Enriquez brings a claim for excessive force under the Fourth Amendment and 42 U.S.C. § 1983 against the Officers. (SAC ¶¶ 47–57.) Defendants move for summary judgment on this claim on the grounds that the Officers are entitled to qualified immunity. (Mot. 5–16.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity requires a two-pronged analysis: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* at 232 (citations

---

[5] In the PTCO, Enriquez does not abandon his sixth cause of action against the City for municipal liability based on unconstitutional customs or policies and does not explicitly seek to pursue this claim at trial. (PTCO 2.) To the extent Enriquez seeks to pursue his sixth cause of action based on the City's alleged custom or policy of providing inadequate training, (*see* SAC ¶ 87(b)), the Court includes this claim in its analysis.

omitted). A court may address either prong of the qualified immunity analysis first. *Id.* at 236. "[I]f the answer to either [prong] is 'no,'" then the Court need not analyze the other prong, as the officer is entitled to qualified immunity. *Gordon v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021).

"Defendants are only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [the plaintiff], they violated no clearly established constitutional right." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). When considering whether qualified immunity applies to members of a group, the actions of each member must be considered separately. *See Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000), *as amended* (Oct. 31, 2000) ("[I]n resolving a motion for summary judgment based on qualified immunity, a court must carefully examine the specific factual allegations against each individual defendant (as viewed in a light most favorable to the plaintiff).").

The Court first considers whether Officers Mays and Lizardo, the shooting officers, are entitled to qualified immunity, then turns to Officers Costin and Nogales, the non-shooting officers.

### 1. Officers Mays and Lizardo

Enriquez alleges that Officers Mays and Lizardo used excessive force when they shot him four times without warning. (Opp'n 5–10; SGD 52 *see* SAC 49–51.) Defendants argue that Officers Mays and Lizardo are entitled to qualified immunity because their use of force was reasonable under the circumstances and did not violate a clearly established right. (Mot. 9–12, 16.)

#### a. Constitutional Violation

"An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances." *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017). "The 'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

To determine whether force was "reasonable" under the Fourth Amendment, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal quotation marks omitted). First, courts "assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). Second, courts consider "the importance of the government interests at stake by evaluating" the *Graham* factors: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

These factors are considered under "the totality of the circumstances" to determine "whether the severity of force applied was balanced by the need for such force." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). This is "a highly fact-intensive task." *Id.* "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury." *Id.* at 1123 (internal quotation marks omitted).

In this case, the parties do not dispute that the nature and quality of the intrusion is severe, as Officers Mays and Lizardo used lethal force when they shot Enriquez four times. (Mot. 9; Opp'n 6.) Thus, the constitutional violation analysis boils down to whether the governmental interests, under the circumstances, justified the use of lethal force.

The first *Graham* factor, which considers the severity of the crime at issue, weighs in Enriquez's favor. This factor looks "to the alleged crime of the person being detained." *Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 692 (9th Cir. 2023). However, "the severity of the crime decreases when the crime is not

in progress at the time of the incident." *Martinez v. City of Ontario*, No. 5:21-cv-01099-JGB (SPx), 2023 WL 3875064, at *6 (C.D. Cal. May 24, 2023) (citing *S.R. Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019)).

Here, Defendants argue that the severity of the crime weighs in their favor because the Officers "had probable cause to believe" that Enriquez was involved in crimes that "threatened infliction of death and serious physical harm" and that the police vehicle pursuit indicated "the lengths [Enriquez] will go to avoid apprehension by law enforcement." (Mot. 10.) It is undisputed that Officers Mays and Lizardo knew Enriquez was the suspect involved in an armed robbery and a subsequent police vehicle pursuit, had fled from the traffic collision on foot, and was armed with a weapon in his pocket. (SUF 7–8, 11–17, 33, 48.) Indeed, armed robbery "is without question a very serious crime." *Johnson v. County of Los Angeles*, 340 F.3d 787, 793 (9th Cir. 2003).

But while Enriquez may have committed serious crimes prior to being detained by Officers Mays and Nogales, he was indisputably not engaged in any such conduct when the Officers shot him. Defendants fail to specify what crime Enriquez was engaged in during the interaction. (*See* Mot. 9–10.) At most, based on Enriquez's version of the events, Enriquez's crime at the time of the interaction was possession of a firearm, which he did not brandish throughout the interaction with the Officers. Viewing these facts in the light most favorable to Enriquez, a jury could "conclude that the severity of [Enriquez's] crimes, whether characterized as a misdemeanor or an already completed felony, did not render [the Officers'] use of deadly force reasonable." *Browder*, 929 F.3d at 1136 (finding plaintiff's possession of a knife not sufficiently serious to render deadly force reasonable); *see also Perkins v. City of Modesto*, No. 1:19-cv-00126-NONE (EPGx), 2022 WL 297101, at *11 (C.D. Cal. Feb. 1, 2022) (finding the severity of the crime did not weigh in the officer's favor when the suspect was wanted for assaulting an officer with a firearm at some time in the past). Thus, the first factor weighs in favor of Enriquez.

The second, and most important, *Graham* factor looks to whether the suspect posed "an immediate threat to the safety of the officers or others." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). This factor turns on disputed facts and weighs in Enriquez's favor.

Defendants contend that Officers Mays and Lizardo "reasonably perceived that [Enriquez] posed an immediate threat to their safety and to others." (Mot. 10.) It is undisputed that Enriquez possessed a firearm, was suspected of committing numerous serious crimes, repeatedly disobeyed orders by removing his hands from the hood of the police vehicle, and at times moved his hands towards his waistline. (Mot. 10; SUF 25, 30, 37, 40, 42.) It is also undisputed that Officer Costin ordered Enriquez to get on his knees. (SUF 50.) But the parties dispute what happened next. Defendants' version of events is that, following Officer Costin's order, Enriquez "drop[ped] his right hand towards his front right pocket," and made a "quick movement of his hand to the location of his gun." (Mot. 11; SUF 51, 111–12.) Enriquez disputes this account, claiming that he removed both of his hands simultaneously off the hood of the police vehicle to prepare to lower his body to the ground in compliance with Officer Costin's order. (SGD 51; AMF 161, ECF No. 68.[6]) The police bodycam footage shows that Enriquez removed and lowered both of his hands simultaneously towards his body and then moved his hands slightly away from his body. (Mays Bodycam 5:57:30.) Considering the bodycam footage and viewing these disputed facts in the light most favorable to Enriquez, a reasonable jury could conclude that Enriquez's movements did not pose a danger to the Officers and instead, were to comply with Officer Costin's order to get on his knees. Thus, the second factor turns on disputed facts and, when viewed in favor of Enriquez, also weighs in his favor.

The third *Graham* factor, whether the suspect was resisting arrest, weighs in favor of Enriquez. In this case, Enriquez did not attempt to escape or resist arrest during the interaction with the Officers. While he may have disobeyed the Officers'

---

[6] Enriquez submits a combined SGD and AMF; the AMF begins on page 37. (*See* ECF No. 68).

orders to keep his hands on the hood and away from his pockets, this is "a far cry from actively struggling with an officer attempting to restrain and arrest an individual." *Bryan v. MacPherson*, 630 F.3d 805, 829–30 (9th Cir. 2010) (finding defendant's failure to comply with the officer's order to remain in his car by stepping outside his car, yelling gibberish, and hitting his thighs did not constitute resistance); *see also Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (finding defendant's refusal to place his arms behind his back was not "particularly bellicose"). A reasonable jury could find, under the minimal resistance to the Officers' verbal commands shown in this case, that the use of lethal force was unreasonable.

Under the totality of the circumstances and viewing the disputed facts in Enriquez's favor, a reasonable jury could find that Enriquez's crime was not severe, he did not pose an immediate threat or danger to the officers, and he did not resist arrest. Therefore, there remains a dispute of material fact whether Officers Mays and Lizardo violated Enriquez's Fourth Amendment rights by using lethal force. Accordingly, the Court cannot grant summary judgment on these grounds.

### b.  <u>Clearly Established Right</u>

Defendants next argue that Officers Mays and Lizardo are entitled to qualified immunity because Enriquez cannot identify a case clearly establishing that shooting "an armed robbery suspect, who reaches towards his firearm in direct contravention of multiple commands for him not to" do so, violates the Fourth Amendment. (Mot. 16.)

For the purposes of qualified immunity, a right is clearly established if "a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006). The inquiry in excessive force cases is whether "under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and [whether] any mistake to the contrary would have been unreasonable." *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (alteration in original). The Supreme Court has cautioned against

defining "clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Rather, a clearly established constitutional right "must be 'particularized' to the facts of the case." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017). The plaintiff bears the burden to "point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful." *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019).

As described above, a jury could reasonably conclude that Enriquez was not reaching for his weapon and was, instead, following Officer Costin's command to get on his knees when he moved both his hands down towards his waistline. The law is clearly established that possession of a firearm does not justify lethal force. *See Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (finding "the police officers could not reasonably have believed the use of deadly force was lawful because [plaintiff] did not point the gun at the officers and apparently was not facing them when they shot him"); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ("[T]he fact that the 'suspect was armed with a deadly weapon' does *not* render the officers' response per se reasonable under the Fourth Amendment."). In *George*, the officers shot an elderly man suspected of domestic disturbance with a firearm after they arrived at the elderly man's home, and he exited onto his balcony holding a firearm. 736 F.3d at 832–33. The Ninth Circuit in *George* determined that a reasonable jury could find the officers violated the Fourth Amendment when they shot the elderly man without objective provocation while his gun was trained to the ground. *Id.* at 839. Likewise, in *Estate of Lopez v. Gelhause*, 871 F.3d 998, 1019–21 (9th Cir. 2017), the Ninth Circuit established that using deadly force on an armed individual who was not pointing a weapon at the officer was constitutionally excessive.

Accordingly, the Court finds that Enriquez satisfies his burden of showing a clearly established right under the circumstances. Officers Mays and Lizardo are thus not entitled to qualified immunity on this basis.

### c. Conclusion

As Enriquez raises a genuine dispute of fact as to the reasonableness of Officers Mays's and Lizardo's conduct and sets forth clearly establish case law, the Court **DENIES** Defendants' Motion as to the second cause of action against Officers Mays and Lizardo.

### 2. *Officers Costin and Nogales*

Defendants next argue that Officers Costin and Nogalez are entitled to qualified immunity because (1) Enriquez cannot identify a clearly established right and (2) Officers Costin and Nogales cannot be held liable for the alleged constitutional violation because they did not shoot Enriquez, were not integral participants, and did not have "any realistic opportunity to intercede." (Mot. 12–14, 16.) In his Opposition, Enriquez argues that Officer Costin's conduct violated a clearly established constitutional right as an integral participant and does not discuss Officer Nogales at all. (*See generally* Opp'n.)

Enriquez cites only to *Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022) to argue that Officer Costin's conduct violated a clearly established constitutional right as an integral participant. (Opp'n 13.) For a right to be clearly established, it must have been "established *at the time of the conduct*" such that it would be "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Mattos*, 661 F.3d at 440 (emphasis added). Here, *Peck* post-dates the incident, which occurred on August 8, 2021. Furthermore, *Peck* did not establish a constitutional violation by an integral participant. In *Peck*, the Ninth Circuit did not find the non-shooting defendants to be integral participants liable for a constitutional violation. 51 F.4th at 892. Instead, the Ninth Circuit held only that a defendant *may be* liable for a constitutional violation as an integral participant if he (1) "knew about

and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation," or (2) "set into motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Id.* at 891. Therefore, not only was *Peck* not established law at the time of the incident at issue, but Enriquez also cannot rely on *Peck* as clear precedent to put Officers Costin and Nogales on notice that their conduct would violate a constitutional right. *See Kennedy*, 439 F.3d at 1065 (explaining a right is clearly established if "preexisting law provided the defendants with 'fair warning' that their conduct was unlawful"). Enriquez fails to cite to any other case law that existed at the time of the incident that would put Officers Costin and Nogales on notice that their conduct would violate a constitutional right. (*See generally* Opp'n 14–17.)

Accordingly, the Court **GRANTS** Defendants' Motion as to the second cause of action against Officers Costin and Nogales and need not decide whether Officers Costin and Nogales violated Enriquez's constitutional rights under the integral participants and failure to intercede theories. *See Pearson*, 555 U.S. at 244–45 (finding defendants are entitled to qualified immunity because "the unlawfulness of the officer's conduct in this case was not clearly established").

### D.    Fifth Cause of Action—Failure to Train

Defendants move for summary judgment on Enriquez's fifth cause of action against the City for municipal liability based on a failure to train its officers because Enriquez does not present evidence of a widespread problem with the City's training policies. (Mot. 18–20.)

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). This standard is met when "the need for more or different training is so

obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

In the Second Amended Complaint, Enriquez alleges that the City's training policies "were not adequate to train its officers to handle the usual and recurring situations . . . . [including] training with respect to tactics, handling situations with the mentally ill, and the use of force, including deadly force." (SAC ¶ 76.) In his Opposition, Enriquez fails present evidence to support a pattern of "similar constitutional violations." (*See* Opp'n); *Connick*, 563 U.S. at 62. The only evidence that Enriquez submits is a declaration and report by a police practices expert, Roger Clark. (Decl. Jeffrey Mikel ISO Opp'n ("Mikel Decl.") Ex. J ("Clark Decl. & Report"), ECF No. 69-8.) Absent from Clark's declaration and report are any instances of similar constitutional violations to show the City had a pattern of failing to train its officers. (*See generally id.*) Instead, the report states that "police departments for decades have trained their officers in safe and accepted ways to contain, assess and arrest subjects in order to avoid injuries." (*Id.* at 31.) Clark opines that Officers Mays and Lizardo "did not reassess [the threat or danger] as required" by their training and Officer Costin "broke the fundamental tactical teaching that only one officer should be giving indirections [sic]/commands to a suspect in this incident." (*Id.* at 32.) At best, Enriquez presents evidence that Officers May, Lizardo, and Costin deviated from training. But he does not show a widespread pattern that supports a need for more or different training. This is insufficient to establish municipal liability for failure to train. *See, e.g.*, *M.A. v. County of San Bernadino*, No. 5:20-00283-JFW (SHKx), 2021 WL 4706716, at *13 (C.D. Cal. June 24, 2021) ("[W]hether or not [the officers] followed their training does not demonstrate a program-wide inadequacy in

training."). Therefore, even viewing the facts in Enriquez's favor, a jury cannot reasonably find the City failed to train its officers. The Court **GRANTS** Defendants' Motion as to Enriquez's fifth cause of action.

### E. Sixth Cause of Action—Unconstitutional Custom or Policy

Lastly, Defendants move for summary judgment on Enriquez's sixth cause of action against the City for municipal liability because Enriquez presents no evidence of a widespread unconstitutional custom, policy, or practice. (Mot. 20.) Enriquez does not address this argument in his Opposition nor indicate whether he abandons this claim or seeks to pursue this claim at trial. (*See generally* Opp'n; PTCO.)

A plaintiff "seeking to impose liability on a municipality under § 1983 [is required] to identify a municipality 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). In the absence of an expressly adopted policy, a municipality may still be liable if "an employee commits a constitutional violation pursuant to a longstanding practice or custom." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). The plaintiff "must prove the existence of a longstanding practice or policy to the satisfaction of the factfinder." *Id*.

As Enriquez fails to address this argument in his Opposition or present any evidence to show that the City had a longstanding custom or policy that caused his injury, he fails to raise sufficient facts to show a genuine dispute as to this claim. *See id.*; *see also Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (agreeing that plaintiff "abandoned" two of her claims "by not raising them in opposition" to the motion for summary judgment). Accordingly, the Court **GRANTS** Defendants' Motion as to Enriquez's sixth cause of action.

## VI.  CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion for Summary Judgment.  (ECF No. 62).  Pursuant to the PTCO, the Court also dismisses Enriquez's first, third, and fourth causes of action. Enriquez's only surviving cause of action is the second cause of action for excessive force against Officers Mays and Lizardo.

The parties must notify the Court whether, because of this Order, any motions in limine may be denied in full or in part as moot by no later than **May 7, 2025**. Should this Order result in changes to the submitted exhibit and witness lists, the parties must file amended exhibit and witness lists by no later than **May 9, 2025.**

**IT IS SO ORDERED.**

May 5, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**